IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **LAKEN SAWYERS,** individually and on behalf of all other similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**THE LAND STATION**, a California corporation,<br><br>*Defendant.* | Case No. 1:25-cv-1054<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Laken Sawyers ("Plaintiff Sawyers" or "Sawyers") brings this Class Action Complaint and Demand for Jury Trial against Defendant The Land Station ("Defendant" or "The Land Station") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the North Carolina Telephone Solicitations Act ("NCTSA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Sawyers, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Sawyers is a resident of Mount Airy, North Carolina.

2. Defendant The Land Station is a California registered corporation located in Concord, California. Defendant The Land Station conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the NCTSA claim because it arises from the same conduct as the TCPA claim.

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant directed its wrongful conduct into this District where the Plaintiff resides.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in September 2025 alone, at a rate of 135.1 million per day. www.robocallindex.com (last visited November 2, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant The Land Station purchases vacant land throughout the country from land owners and consumers.[3]

15. Defendant The Land Station sends text messages to solicit its land purchasing services.

16. Defendant The Land Station sends telemarketing text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.thelandstation.com/

17. Upon information and belief, The Land Station directly sends text messages to potential land sellers using its employees or agents.

18. The text messages that Plaintiff Sawyers received indicate that they were sent from TLS, which is short for The Land Station.

19. Upon information and belief, The Land Station exercises control over the content, timing, and recipients of text messages sent using the "TLS" identifier.

20. The text messages that The Land Station sends out to consumers and land owners are solicitations.

21. According to Land Insights, a land investor like The Land Station will typically offer to purchase a property for between 40 – 60% of its value in order to generate a profit:



[4]

22. As per the above image, the price that is offered to a land owner/consumer also accounts for realtor commissions and closing costs.

[4] https://www.landinsights.co/ – Based on the Offer and Profit calculator

23. The Land Station uses Land Insights to determine land property values and to calculate profits:



[5]

24. This means that a land offer from The Land Station will be at least half the value of the land.

25. In fact, Michael Bull, the owner of The Land Station[6] posted on landinvestor.co about deals he has closed where he was able to sell land for at least 4x what he paid:

---

[5] https://www.landinsights.co/wall-of-love

[6] https://www.thelandstation.com/about



[7]

26. When a consumer sells land to a company like The Land Station, they are receiving a depreciated cash offer which accounts for Defendant's profit and costs, meaning that the consumer is incurring a financial cost by doing business with The Land Station through that depreciated land value.

27. In comparison, a consumer can sell their land through a realtor for the full value of the land, minus realtor and closing costs, which would net a much larger profit for the consumer than they would receive through a cash offer from The Land Station.

28. In response to these text messages, Plaintiff Sawyers brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and NCTSA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF SAWYERS' ALLEGATIONS**

29. Plaintiff Sawyers is the sole owner and exclusive user of her cell phone number ending in 0129.

---

[7] https://landinvestor.co/group-coaching-courses/

30. Plaintiff Sawyers' cell phone number ending in 1029 is a residential telephone number as defined under 47 C.F.R. § 64.1200(f)(14), meaning it is used for personal, family, or household purposes and not primarily for business or commercial purposes.

31. Plaintiff Sawyers' cell phone number begins with a 336 North Carolina area code.

32. Plaintiff Sawyers is a resident of North Carolina and was present in North Carolina during the time she received text messages from The Land Station.

33. Plaintiff Sawyers registered her cell phone number on the DNC on May 30, 2025.

34. Plaintiff Sawyers uses her cell phone number for personal use only as one would use a landline telephone number in a home.

35. Plaintiff Sawyers uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for her other household needs.

36. Plaintiff Sawyers pays for her cell phone plan. It is not reimbursed by a business.

37. Plaintiff Sawyers has never had her cell phone number associated with a business.

38. This phone number is not used in any business or marketing materials.

39. Plaintiff Sawyers has never listed her cell phone number publicly as a business contact number.

40. Plaintiff Sawyers registered her cell phone number on the DNC because she was receiving unsolicited calls and text messages from companies offering to purchase land they believed Plaintiff owns.

41. This includes unsolicited text messages that Plaintiff Sawyers received from The Land Station.

42. For example, on May 8, 2025 at 3:48 PM, Plaintiff Sawyers received an unsolicited text message to her cell phone from 619-310-2158:




43. As per the text message, it references the fact that it was sent by "Frank from TLS again."

44. TLS is short for The Land Station and 619-320-2158 is owned/operated by The Land Station.[8]

45. On July 24, 2025 at 4:51 PM, Plaintiff Sawyers received another unsolicited text message to her cell phone from 619-320-2158, which was 55 days after registering her cell phone number on the DNC:

---

[8] Based on an investigation conducted by Plaintiff's attorneys.




46. On October 1, 2025 at 6:59 PM, Plaintiff Sawyers received another unsolicited text message to her cell phone, this time from 619-407-7016:




47. As per the May 8, 2025 text message, this text message shows that it was sent from TLS.

48. 619-407-7016 is owned/operated by The Land Station.[9]

49. As seen above, the text messages that Plaintiff Sawyers received are solicitations offering to purchase land, soliciting Plaintiff to enter into a commercial transaction with The Land Station.

50. These text messages constitute "telephone solicitation" under both the TCPA and NCTSA as they were sent for the purpose of soliciting or encourage the purchase of property.

51. Plaintiff Sawyers has never provided her telephone number to The Land Station.

52. Plaintiff Sawyers never provided express written consent to The Land Station to receive text messages or calls.

53. Plaintiff Sawyers has never inquired about selling land to The Land Station.

54. Plaintiff Sawyers has never visited The Land Station's website(s) or filled out any forms requesting contact.

55. Plaintiff Sawyers does not own any land and has never owned any land, making the solicitation particularly inappropriate.

56. There is no established business relationship between Plaintiff and The Land Station that would exempt these communications from TCPA or TCTSA requirements.

57. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Sawyers in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

58. Seeking redress for these injuries, Plaintiff Sawyers, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA and North Carolina Telephone Solicitations Act.

---

[9] Based on an investigation conducted by Plaintiff's attorneys.

## CLASS ALLEGATIONS

59. Plaintiff Sawyers brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant The Land Station texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.
>
> **North Carolina Telephone Solicitations Class:** All persons in North Carolina who from four years prior to the filing of this action through class certification (1) Defendant The Land Station sent a text message to their phone number that is registered on the Do Not Call Registry (2) where the text was sent for the purpose of soliciting the purchase of real estate property (3) for whom The Land Station has no record of prior express invitation or permission, or an existing business relationship.

60. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Sawyers anticipates the need to amend the Class definitions following appropriate discovery.

61. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

62. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant The Land Station placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call and/or text message;

(b) whether the text messages constitute a violation of the TCPA;

(c) whether the text messages constitute a violation of the NCTSA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

63. **Adequate Representation**: Plaintiff Sawyers will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Sawyers has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Sawyers and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Sawyers nor her counsel have any interest adverse to the Classes.

64. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect

to the Classes as wholes, not on facts or law applicable only to Plaintiff Sawyers. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Sawyers and the Do Not Call Registry Class)**

65. Plaintiff repeats and realleges the paragraphs 1-64 of this Complaint and incorporates them by reference herein.

66. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

67. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

68. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Sawyers and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is

maintained by the federal government.

69. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Sawyers and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

70. As a result of Defendant's conduct as alleged herein, Plaintiff Sawyers and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## **SECOND CAUSE OF ACTION**
**North Carolina Telephone Solicitations Act**
**(Violation of N.C. Gen. Stat. §§ 75-101 et seq.)**
**(On Behalf of Plaintiff Sawyers and the North Carolina Telephone Solicitations Class)**

72. Plaintiff repeats and realleges paragraphs 1-64 of this Complaint and incorporates them by reference herein.

73. The North Carolina Telephone Solicitations Act makes it unlawful for any person or entity to initiate a telephone solicitation to the telephone line of any subscriber who has registered the number on the National Do Not Call registry.

74. As per N.C. Gen. Stat. § 75-101(9), "Telephone solicitation" means a voice or text communication, whether prerecorded, live, or a facsimile, over a telephone line or wireless telephone network or via a commercial mobile radio service that is made by a telephone solicitor to a telephone subscriber for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services; obtaining or providing information that will or may be

used for that purpose; soliciting or encouraging a telephone subscriber's participation in any contest, sweepstakes, raffle, or lottery, whether legal or illegal; or obtaining a charitable donation. "Telephone solicitation" also includes those transactions that are defined as "telemarketing" under the Telemarketing Sales Rule."

75. Defendant violated N.C. Gen. Stat. §§ 75-101 et seq. by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Sawyers and the North Carolina Telephone Solicitations Class members who received text messages despite having their phone numbers registered on the DNC for at least 30 days prior to the first text message.

76. As a result of Defendant's conduct as alleged herein, Plaintiff Sawyers and the NCTSA Class suffered actual damages and, under Stat. §§ 75-105 (b) are entitled to receive up to $500 in damages for the first violation, and $1,000 for each subsequent violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the NCTSA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Sawyers requests a jury trial.

**LAKEN SAWYERS**, individually and on behalf of all others similarly situated,

DATED this 19th day of November, 2025.

By: /s/ *Ryan Duffy*
Ryan Duffy
The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 9
Belmont, NC 28012
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Classes*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*

**Pro Hac Vice motion forthcoming*